THE UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:22CR135 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| SETH HOOVER, | ) | |
| | ) | |
| Defendant. | ) | |

On November 13, 2024, the Court finalized Defendant Seth Hoover's sentence of 420 months. This order serves to supplement the Court's sentencing and resolves Hoover's numerous arguments regarding that sentencing.

Initially, the Court notes that it began Hoover's sentencing on October 16, 2024. During that hearing, the Court also sentenced Hoover to 420 months. However, the Court committed a clerical error when it announced the sentences attached to the individual counts in Hoover's conviction. The Government highlighted this clerical error in its motion filed on October 17, 2024. In an attempt to give notice and provide Hoover an opportunity to be in court to correct the error, the Court noticed a continued sentencing hearing for October 23, 2024. On that date, Hoover's counsel and government counsel appeared for the hearing. Hoover, however, refused to be transported by the U.S. Marshal service. As a result, the Court reset the hearing to correct sentence for November 13, 2024. With Hoover's consent, the matter proceeded by videoconference to alleviate Hoover's anxiety over being transported to the hearing.

I. Rule 35 Objection

Hoover contends that his final hearing was improper under Fed. Crim. R. 35(a). Hoover is correct that Rule 35(a) only permits 14 days to "correct a sentence that resulted from arithmetical, technical, or other clear error." The time period provided for in Rule 35(a) is jurisdictional, and the court lacks jurisdiction to correct a sentence after the fourteen-day period set forth in Rule 35(a) has expired. *United States v. Hall*, 661 F.3d 320, 322 (6th Cir. 2011) ("[T]he district court lacked jurisdiction to resentence Hall beyond the fourteen-day limitation period set forth in Rule 35(a)."). However, beyond the 14-day period set by Rule 35(a), "the court has jurisdiction to amend the sentence [] in conformity with Rule 36." *United States v. Robinson*, 368 F.3d 653, 656 (6th Cir. 2004). Rule 36 allows courts to correct a "clerical error" or "an error in the record arising from oversight or omission." *See* Fed. R. Crim. P. 36. Rule 36 is available only to correct clerical errors, not to cure "unexpressed sentencing expectations." *Robinson*, 368 F.3d at 656-57.

Herein, the Court did not cure unexpressed sentencing expectations. Instead, the Court corrected a clerical error. Specifically, the Court *always* intended to sentence Hoover to an aggregate term of 420 months incarceration. However, during his initial hearing, the Court misspoke and announced Hoover's sentence as follows:

> So for those reasons, pursuant to the Sentencing Reform Act of 1984, 18 United States Code 3553(a), we'll impose a custody period of 420 months on Count 1 and 2 to be served concurrently with the 60 months on -- excuse me, Count 1 and 3 for the 420 months, and then the 60 months will be concurrent and not consecutive for a total sense of 420 months.

At that time, the Court inadvertently imposed a sentence greater than the statutory maximum on Count 3 and ran the mandatory 5-year consecutive sentence as concurrent. As this clerical error

2

was discovered promptly, the Court relied upon Rule 36 to correct it. Accordingly, the 14-day window in Rule 35(a) was not implicated by the Court's proceedings.[1]

II. Disclosures for sentencing witness

During the final sentencing hearing, the Government noted that it intended to call a witness to provide information that indicated that Hoover had continued his criminal activity. Counsel for Hoover contended during the hearing that he believed that "the defense is permitted to have that information, *Jencks and Giglio*, to provide us information so that we can investigate it, we can learn who this person is, and potentially subpoena that person to rebut anything that the government were to testify to." Specifically, counsel sought information regarding a confidential informant that provided information to the testifying agent. Counsel provided no authority for the premise that the Government was required to disclose the identity of this witness.

A district court may consider any "information concerning the background, character, and conduct" of a defendant when imposing sentence. 18 U.S.C. § 3661; *see* USSG § 6A1.3(a). Such information includes sufficiently reliable evidence and "testimony presented at a related proceeding." *United States v. Bey*, 384 F. App'x 486, 490 (6th Cir. 2010) (quoting *Logan v. United States*, 208 F.3d 541, 544 (6th Cir. 2000)). Moreover, "neither the rules of evidence nor the right to confront witnesses applies at sentencing." *Bey*, 384 F. App'x at 490 (quoting *United States v. Christman*, 509 F.3d 299, 304 (6th Cir. 2007)). Accordingly, the Court finds no merit in Hoover's contention that additional disclosures were required before the Court took testimony from Officer Ryan Stewart.

---

[1] The Court would note that if Rule 35(a) were implicated, it believes that compliance with the Rule was achieved. The Court announced its intent to correct the sentence within 14 days *and* scheduled a hearing to accomplish that matter within *7 days* of the initial hearing. It was only Hoover's refusal to attend the hearing that caused the delay. The Court does not believe that such action taken by a defendant can result in the Court losing jurisdiction to impose sentence.

III. Acceptance of Responsibility

The Court now turns to the testimony offered by Ryan Stewart and its impact on Hoover's sentencing guideline range. Stewart testified that through his investigation of Hoover that he learned of another individual suspected of drug trafficking, Jose Rodriguez. Stewart's investigation ultimately led to the arrest of Rodriguez and the seizure of his cell phone. At the time of the seizure, Stewart had become aware that Rodriguez and Hoover had spoken numerous times on the recorded line of the detention facility in which Hoover was being held. Stewart also noted that Hoover informed Rodriguez that he was going to call him from a "clean phone." Stewart interpreted this to mean a phone that was not connected to the recorded line at the detention facility.

Through a confidential source, Stewart learned that Rodriguez was communicating with the phone number 234-275-3487 in the detention facility and that it was Hoover using that phone. However, Stewart did not solely rely upon this source to reach the conclusion that Hoover was the person using the -3487 number. Stewart noted that the text messages started roughly 2 weeks after Hoover discussed the clean phone with Rodriguez. The messages also discussed topics that overlapped with topics discussed by Hoover and Rodriguez on the record line at the detention facility. For example, the two discussed an individual they referred to as Joker during a recorded call. Within the text messages, Rodriguez included, "Send me Joker's number. I thought I had it and I don't." Similarly, both the recorded calls and the text messages reference an individual referred to as Uncle. These similarities coupled with the information provided by the confidential source provide more than ample evidence to demonstrate that Hoover was using the -3487 cell phone while incarcerated for this matter.

4

Based upon the Court's conclusion, it found that Hoover's continued criminal activity while in custody awaiting final judgment compelled the Court to find that he was not entitled to any reduction for acceptance of responsibility. As a result, Hoover's final offense level was a 37 with a criminal history category VI. As such, his advisory guideline range was 420 months to life in prison.[2] While Hoover maintained objections to the Court's prior determination that he was a career offender, the Court will not rehash those arguments herein. Rather, the Court incorporates by reference its prior extensive review of Hoover's arguments. See Docs. 94 and 105.

IV. <u>Section 3553(a) Factors</u>

Having calculated Hoover's guideline range, the Court now reviews the § 3553(a) factors that supported its final sentence.

First, the Court starts with an overview of Hoover's criminal history. Hoover began his involvement with the legal system at age 15 when he was involved with a minor misdemeanor drug possession. Later, still at age 15, he was charged with possession of drug paraphernalia. At 16, he was charge with two counts of theft, safecracking, and drug abuse. At 17, he was charged with fifth-degree felony drug abuse and sent to jail for the first time – for 30 days. He spent an additional 15 days in jail for the probation violation stemming from that conviction. At 18, Hoover was convicted of 2 counts trafficking in cocaine and sentenced to 18 months in prison. Hoover's convictions at 19 include misdemeanor assault, misdemeanor theft, felony possession of cocaine and felony possession of criminal tools. At twenty, he was conviction of felony trafficking in marijuana. At twenty-two, he was convicted of felony trafficking in cocaine that ultimately resulted in a four-year term of incarceration. Notably, during that period of

---

[2] The range is increased from 360 months to life to 420 months to life to incorporate the mandatory 60-month sentence that must be served consecutively to any other sentence for Hoover's conviction for possession of a firearm in furtherance of a drug trafficking crime.

5

incarceration: "On May 28, 2017, he was cited in a report that marked the completion of an investigation into fence throws, which included contraband consisting of tobacco and cell phones. Several other violation reports point to an investigation that indicated the defendant had been selling marijuana, tobacco, and cell phones to other inmates at Richland Correctional Institution as early as May 2013." Doc. 85 at 12.[3]

At twenty-four, Hoover was convicted of trafficking in heroin and cocaine. His four-year sentence and two-year sentences were imposed at the same time as his prior offense from age twenty-two, resulting in aggregate sentence of 10 years in custody. It appears that he was released from custody from these sentences on March 14, 2019. On October 10, 2020, he was then charged with possession of drug abuse instruments, obstruction, and operating a vehicle under the influence. Two months later, he was charged with another OVI, driving under suspension, and hit/skip. During that matter:

> While in pretrial detention, the defendant argued with officers because he wanted to shower. He stated that an officer touched him in the change out room. Further, he told an officer it would not be hard to find the officer and get the officer. He stated the officer's daughter and his daughter played on the same softball team and that the defendant knew how to reach the officer. Another officer interviewed the defendant, and he admitted to recognizing the officer from their daughters being on the same softball team; however, he stated, 'I'm not gonna threaten a cop.'

Doc. 85 at 15-16.

The instant matter resulted from a traffic stop on September 25, 2021 during which Hoover initially gave the false name of John Edwin Hernandez. Ultimately, the vehicle was searched and officers recovered 1,887.14 grams of a substance containing a fentanyl analogue. The search also revealed a firearm near the driver's seat. During that arrest, Hoover informed

---

[3] This fact only serves to reinforce the Court's finding that Hoover possessed a cell phone during his time in pretrial incarceration.

6

officers that he was associated with the Sinaloa Cartel and had made three trips to and from New York for drug trafficking.

As detailed above, Hoover then continued to correspond with an individual while incarcerated. The content of those calls made it clear that the individual had essentially stepped into Hoover's role of trafficking for the cartel while Hoover was incarcerated. The individual, Rodriguez, lamented that his supplier "was giving [Hoover] three to five grand of those but he only giving me like 1,000 of them. And rare when he give me 1,500 of them." In other words, Hoover had built up more trust with the cartel than Rodriguez and was therefore trusted with larger quantities of drugs. Rodriguez's discussion of Hoover receiving five thousand pressed pills of fentanyl was consistent with Hoover's admission that a package containing that quantity of pills that had been seized had been intended to be delivered to him.

In nearly any other circumstance, the Court could justify an *upward* variance from Hoover's advisory guideline. Dating back to his youth, Hoover has shown a total inability to live within the confines of the law. Even a decade in prison for drug trafficking did not dissuade him almost immediately returning to the drug trade. However, this time around, Hoover decided to traffic in an even deadlier controlled substance – fentanyl. Moreover, not only did Hoover have more than 1800 grams of fentanyl, but he also chose to carry a firearm in his vehicle as well. While the Court takes note that these latter two facts are accounted for in the advisory guideline range, that range does little to take into account that fentanyl is ravaging the country.

Hoover's history also indicates that time and time again he has violated probation and/or the terms of his release by nearly immediately returning to crime – just as he did here. Furthermore, while facing a lengthy sentence herein and incarcerated for the duration of his pretrial proceedings, Hoover *continued* to engage in the drug trade. Simply put, Hoover has

7

demonstrated that *no sentence* will be strong enough to deter him from engaging in the drug trade.

The Court, however, also acknowledges the weighty sentence that could be imposed by giving Hoover solely the *low* end of his advisory guideline range. As noted above, Hoover's longest previous sentence was a 10-year aggregate sentence from multiple prior state offenses. The 35-year sentence resulting from the low end of the advisory guideline range will result in Hoover being nearly 70 years old before leaving prison. Given all of the above, however, that sentence if sufficient but not greater than necessary to protect the public from Hoover and, hopefully, finally offer a deterrent to him return to crime yet again,

The Court placed the remaining terms of Hoover's sentence on the record during his sentence and within his written judgment. Therefore, they will not be reiterated herein.

IT IS SO ORDERED.


Dated: <u>November 26, 2024</u>             <u>*/s/ Judge John R. Adams*</u>
JUDGE JOHN R. ADAMS
UNITED STATES DISTRICT COURT